# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) No. 16 CR 462-6 |
| | ) |
| | ) Judge Rebecca R. Pallmeyer |
| DAVID PEREZ, a/k/a "Monster," | ) |

## MEMORANDUM ORDER

On July 21, 2016, the grand jury returned a nineteen-count indictment against Defendant David Perez and fourteen other members of the Maywood Latin Kings street gang. (Indictment [4].) The indictment charges the Defendants with conspiring to violate the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1961 *et. seq.*, through their involvement with the Latin Kings. (*Id.* at 1–14.) The indictment also charges the Defendants with numerous violent crimes and firearms offenses in connection with the racketeering conspiracy. (*Id.*) Perez is personally charged with RICO conspiracy (Count One), attempted murder and assault with a dangerous weapon (Counts Two, Three, Four, and Six), and possessing a firearm as a previously-convicted felon (Counts Sixteen through Nineteen).

As one of the predicate acts necessary to establish a pattern of racketeering activity under the RICO Act, the Government alleged that Perez and four others attempted to murder an individual, referred to as "Victim 1," in violation of Illinois law. (*Id.*) The Government claims that two of Perez's co-defendants shot Victim 1 on May 11, 2014, in Melrose Park, Illinois—causing Victim 1 great bodily harm and permanent disfigurement. (*Id.*) The Government alleges that Perez, as the leader or "Inca" of his circle of Latin Kings, ordered those co-defendants to shoot Victim 1 and also helped to locate Victim 1 on the day of the shooting. (Government's Brief Regarding Statutory Maximum on Count One [371] ("Gov't's Br."), 3.) It is undisputed that Perez did not personally discharge a firearm in the course of the attempted murder.

On March 24, 2017, Perez pleaded guilty to Count One's charge of RICO conspiracy. (Plea Agreement [259].) Perez also pleaded guilty to one count of being a felon-in-possession of a firearm in violation of 18 U.S.C. § 922(g)(1). (*Id.*) In his plea, Perez admitted to conspiring to conduct and participate in the affairs of a criminal enterprise (the Latin Kings gang) "through a pattern of racketeering activity, which included threats, intimidation, and violence, [and] which included assaults with dangerous weapons against others[.]" (Plea Agreement 2.) Perez has not, however, admitted to any involvement with the alleged attempted murder of Victim 1 as described in the Special Findings section of Count One, and separately charged against Perez and others in Counts Two and Three.

In Perez's plea agreement, the parties recognized an ongoing disagreement concerning the maximum sentence permitted for his violation of 18 U.S.C. § 1962(d). The parties have now filed briefs so that this legal issue can be resolved prior to sentencing. The Government believes that Perez is eligible for life imprisonment under Section 1963(a) because the RICO conspiracy involved an attempted murder: "a racketeering activity for which the maximum penalty includes life imprisonment" under Illinois law. (Gov't's Br. 5.) The Defendant argues that the maximum sentence is capped at 20 years because Perez would not be subject to a life sentence for attempted murder based on these facts, if he were charged with that crime in Illinois. (Defendant's Response to Gov't's Br. [391] ("Def.'s Resp."), 2.) Because Perez has not admitted to any facts surrounding the attempted murder of Victim 1, the Government acknowledges that it must still prove those underlying facts beyond a reasonable doubt at a future proceeding, should it ask for a sentence of more than 20 years for Perez. (Gov't's Br. 4–5) (citing *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000).)

The sole issue addressed in this opinion is whether a defendant in a RICO conspiracy must be personally eligible to receive a life sentence under state law for a given offense in order to be eligible for a life sentence for a RICO Act violation that relies on that state offense as an

underlying act of racketeering. For the reasons described below, the court finds that the applicable statutory maximum sentence for Defendant David Perez is life imprisonment.

## **DISCUSSION**

RICO violations typically carry a 20-year statutory maximum prison sentence. 18 U.S.C. § 1963(a). The statutory maximum is increased to life, however, "if the violation is based on a racketeering activity for which the maximum penalty includes life imprisonment." *Id.* The Act defines "racketeering activity" as including "any act or threat involving murder . . . which is chargeable under State law." 18 U.S.C. § 1961(1). In Illinois, attempted first-degree murder is not a life-eligible offense without the presence of aggravating factors. Instead, the offense is classified as a Class X felony, which prescribes a range of 6–30 years imprisonment. 720 ILCS 5/8-4(c)(1).

Illinois law does, however, authorize sentences "up to a term of natural life" in cases of attempted first-degree murder "during which the person *personally discharged* a firearm that proximately caused great bodily harm, permanent disability, permanent disfigurement, or death to another person[.]" 720 ILCS 5/8-4(c)(1)(D) (emphasis added). The Government contends that this provision makes Perez eligible for life imprisonment because the charged RICO conspiracy involved such an attempted murder—that is, one in which a person discharged a firearm and caused the requisite harm. Perez objects on two grounds. As a threshold matter, Perez argues that the Government's allegations against Perez do not amount to "racketeering activity" within the meaning of Section 1961(1) because the additional factors required to trigger increased punishment for attempted murder in Illinois are merely a "firearm sentencing enhancement" and not a separate "offense." (Def.'s Resp. at 4–5.) Perez's central objection to his eligibility for a life sentence, however, concerns the "personally discharged" language in the Illinois statute. (*Id.* at 2.) Perez does not dispute that the alleged attack on Victim 1 caused Victim 1 great bodily harm and permanent disfigurement. Rather, Perez emphasizes that he did not personally pull the trigger on Victim 1. Thus, he contends, the "personally discharged"

3

restriction in the Illinois attempted murder statute that authorizes a life sentence limits the sentence that may be imposed under the RICO Act and prevents the Government from "superimposing vicarious liability theories" in an attempt to bypass Illinois law. (*Id.* at 2.)

**1. State "Sentencing Enhancements" Qualify as "Racketeering Activity" under the RICO Act**

Perez's first argument is that, regardless of which individuals may be held accountable for the alleged attempted murder of Victim 1, the Government may not rely on a mere "sentencing enhancement" to trigger a life sentence under RICO because the enhancement is not "racketeering activity" within the definition of 18 U.S.C. § 1961(1). (Def.'s Resp. 6.) Perez cites no authority in the few sentences he devotes to this argument, and his position does not appear to be supported by the law. (*See id.*) On this threshold matter of whether the facts of the alleged attempted murder constitute "racketeering activity," the text of the RICO Act provides a clear answer. The definitions section states that "racketeering activity" includes "*any* act or threat involving murder . . . chargeable under State law." 18 U.S.C. § 1961(1) (emphasis added). An attempted murder with a firearm that specifically results in "great bodily harm, permanent disability, permanent disfigurement, or death" to the victim counts as "any act . . . involving murder . . . chargeable under State law" and is a predicate racketeering activity for the purposes of the RICO Act.

Even if the phrase "any act" could be interpreted some other way, the case law reveals that the RICO Act is concerned with behaviors, not technical categorizations. As summarized by the Seventh Circuit in a RICO case involving bribery that was possibly—but not clearly—prohibited by Illinois law: "[T]he RICO statute incorporates state offenses according to their generic designation. . . . 'The test for determining whether the charged acts fit into the generic category of the predicate offense is whether the indictment charges a type of activity generally known or characterized in the proscribed category.'" *United States v. Garner*, 837 F.2d 1404, 1419 (7th Cir. 1987) (quoting *United States v. Forsythe*, 560 F.2d 1127, 1137 (3d Cir. 1977)).

4

For this reason, the court is not persuaded by Perez's suggestion that there is a difference in "chargeability" between the base offense of attempted murder and the firearm sentencing enhancement in 720 ILCS 5/8-4(c)(1)(D). Perez is indeed correct that Section 5/8-4(c)(1)(D) is most accurately described as a "sentencing enhancement" and not a unique "offense," *see People v. Harris*, 410 Ill. Dec. 591, 600, 70 N.E.3d 718, 727 (1st Dist. 2016), but the categorization is not relevant to this dispute. In fact, treating the two types of provisions differently would appear to run afoul of the Supreme Court's ruling in *Apprendi v. New Jersey*, 530 U.S. 466 (2000). Because Illinois's firearm sentencing enhancement increases the statutory maximum above the maximum for "baseline" attempted murder, *Apprendi* actually *requires* prosecutors to charge a defendant with a "sentencing enhancement" just as they would have to for a basic offense. *Id.* at 490. Either within the context of the RICO Act, or as a standalone offense in the state of Illinois, the varieties of attempted murder that render a defendant subject to a life sentence are "chargeable under State law."

Taken to its logical conclusion, Perez's view would call into question every sentence of more than 20 years imposed for a RICO violation that was based on a violation of Illinois law. There are no "baseline" crimes for which an individual may be sentenced to life in prison in Illinois absent aggravating factors or "sentencing enhancements." Even first-degree murder, in its basic form, only warrants a 20 to 60 year prison sentence in Illinois. 730 ILCS 5/5-4.5-20(a). As with attempted murder, first-degree murder only becomes a life-eligible offense with the presence of aggravating factors. *See* 720 ILCS 5/9-1(b); 730 ILCS 5/5-8-1. In its Reply Brief, the Government logically concluded that all of the "federal racketeering cases in this circuit that involve enhanced sentences under § 1963(a) based on murder or attempted murder in violation of Illinois law *necessarily* involve aggravated forms of these predicate offenses." (Government's Reply Brief [415] ("Gov't's Reply), 4) (citing *United States v. Benabe*, 654 F.3d 753 (7th Cir. 2011)) (emphasis added).

5

This court is not aware of any instance in which another court in this circuit has split the facts underlying a predicate racketeering activity into separate offense and enhancement components. *See, e.g., United States v. Warneke*, 310 F.3d 542, 549–50 (7th Cir. 2002) (affirming the defendants' life sentences for a RICO conspiracy based on predicate acts for which the Illinois aggravated murder statute authorized a life sentence); *Benabe*, 654 F.3d at 757–59 (same); *United States v. Morales*, 655 F.3d 608, 615–19 (7th Cir. 2011) (same). This court therefore declines to adopt Perez's novel interpretation of Section 1961(1). Regardless of whether Perez chooses to call it an "offense" or a "separate sentencing enhancement," the alleged attempted murder is "racketeering activity" under the RICO Act.

**2.     RICO Conspiracy is a Federal Offense and Perez May be Sentenced to Life Imprisonment Based on Actions Committed by his Co-Conspirators**

Perez's core objection to his eligibility for a life sentence rests on Illinois law. Perez argues that his maximum sentence under the RICO Act is capped at 20 years imprisonment because he could not, under any circumstances, receive a life sentence for this specific act of attempted murder if he were prosecuted in the state of Illinois. (Def.'s Resp. 2.) Perez's position, in the court's view, runs contrary to a plain reading of the language of 18 U.S.C. 1963(a) and reflects a misunderstanding of the nature of conspiracy liability. Perez did not plead guilty to a state offense, or even a substantive RICO offense. He pleaded guilty to a conspiracy. Section 1963(a) states only that the "violation"—i.e. the racketeering conspiracy— must be "based on a racketeering activity for which the maximum penalty includes life imprisonment." 18 U.S.C. § 1963(a). As a racketeering conspiracy necessarily involves more than one person, the statute by its terms anticipates the imposition of vicarious liability between co-conspirators. *See Benabe*, 654 F.3d at 776. Perez himself acknowledged as much in his guilty plea by admitting that his violation rested, at least in part, on a pattern of activity to be carried out by other members of the conspiracy:

> Mr. Perez admits that he knowingly conspired to conduct and participate in the conduct of the affairs of the Latin Kings through a pattern of racketeering activity,

6

> which included threats, intimidation, and violence, which included assaults with dangerous weapons against others, and other acts of violence such as [physically beating other gang members to enforce gang rules]. Mr. Perez agreed that some members of the conspiracy would commit at least two acts of racketeering activity.

(Plea Agreement 2–3.)

The case law confirms that the punishment for one individual within a RICO conspiracy may be informed by the actions of others within that conspiracy. A RICO conspiracy charge under Section 1962(d) "does not require proof that the defendant committed two predicate acts of racketeering, that he agreed to commit two predicate acts, or, for that matter, that any such acts were ultimately committed by anyone." *United States v. Tello*, 687 F.3d 785, 792 (7th Cir. 2012) (citing *Salinas v. United States*, 522 U.S. 52, 63, 65–66 (1997)). All that is required to prove primary liability for a particular defendant is evidence of an agreement that *any member* of the conspiracy would commit at least two acts of racketeering. *Benabe*, 654 F.3d at 776; *United States v. Amaya*, 828 F.3d 518, 531 (7th Cir. 2016). Once the existence and scope of the conspiracy is established, "the maximum penalties [ ] each [defendant] face[s] depend[s] on whether the involvement of each in the conspiracy included responsibility for . . . crimes serious enough to authorize a life sentence." *Benabe*, 654 F.3d at 777. Co-defendants in a RICO conspiracy may be held responsible for all of the predicate acts charged "as a direct participant, as an aider-and-abetter, or under *Pinkerton*." *Id.* at 777–78 (citing *Pinkerton v. United States*, 328 U.S. 640, 647–48 (1946)).

Perez cites numerous Illinois state court decisions holding that the Illinois attempted murder statute does not authorize a life sentence for accomplices or conspirators who did not "personally discharge" a firearm at the victim. (Def.'s Resp. 6–8) (collecting cases). This point, however, is not in dispute. The Government concedes that Perez could not receive an enhanced sentence based on these facts if the case were brought by state prosecutors. (Gov't's Br. 6.) Although the statute's "personally discharge" language does indeed "limit[ ] the applicability of accountability principles" in Illinois courts, *People v. Flynn*, 367 Ill. Dec. 854,

7

863–64, 985 N.E.2d 8, 17–18 (1st Dist. 2012), Perez is not in an Illinois court. Sentences under the RICO Act, especially sentences for racketeering *conspiracies*, do not hinge on acts committed by a specific defendant; they reflect the operation of the criminal enterprise as a whole.

As noted, the Federal Courts of Appeals have been unanimous in holding that references to state offenses under the RICO Act "are definitional only." *United States v. Frumento*, 563 F.2d 1083, 1087 (3d. Cir. 1977) ("The gravamen of section 1962 is a violation of federal law and 'reference to state law is necessary only to identify the type of unlawful activity in which the defendant intended to engage.'") (quoting *United States v. Cerone*, 452 F.2d 274, 286 (7th Cir. 1971)); *see also United States v. Licavoli*, 725 F.2d 1040, 1046 (6th Cir. 1984) ("The reference to state law in the statute is simply to define the wrongful conduct, and is not meant to incorporate state procedural law.") (collecting cases). This applies to both the definition of the relevant conduct as well as the scope of an accomplice's or conspirator's liability. *See Benabe*, 654 F.3d at 776 (citing *Salinas*, 522 U.S. at 65–66). Various courts have, for example, recognized, as separate predicate acts, both the conspiracy to commit an offense and the completed offense, even where state law precluded a defendant from being charged with both offenses. *See United States v. Muskovsky*, 863 F.2d 1319, 1330–31 (7th Cir. 1988); *Licavoli*, 725 F.2d at 1046–47. Other federal appellate courts have held that a state court acquittal or the expiry of a state statute of limitations are irrelevant on the question of whether given conduct was "chargeable under State law" within the meaning of 18 U.S.C. § 1961(1). *See, e.g., Frumento*, 563 F.2d at 1087 n. 8A ("Section 1961 requires, in our view, only that the *conduct* on which the federal charge is based be typical of the serious crime dealt with by the state statute") (emphasis in original). In short, RICO is a federal offense, and the specifics of Illinois conspiracy and attempt law do not control the appropriate sentence. *Muskovsky*, 863 F.2d at 1330; *Licavoli*, 725 F.2d at 1046 ("[C]ontrary to defendants' contention, it is irrelevant whether these particular defendants could have been charged under Ohio law and imprisoned

8

for more than one year for both conspiracy to murder and murder."). The law does not require individual defendants to be personally eligible for a life sentence for a predicate act in order for them to receive a life sentence as a member of a racketeering conspiracy. *See, e.g., Salinas*, 522 U.S. at 64 ("If conspirators have a plan which calls for some conspirators to perpetrate the crime and others to provide support, the supporters are as guilty as the perpetrators. . . . A person, moreover, may be liable for conspiracy even though he was *incapable* of committing the substantive offense.") (emphasis added).

Perez is not the first defendant to advance the argument that Illinois law insulates racketeering conspirators from enhanced sentences in federal proceedings. In *United States v. Chester*, No. 13 CR 774, 2017 WL 3394746, *1 (N.D. Ill. Aug. 8, 2017) (Tharp, J.), another judge in this District rejected a similar argument by defendants in a RICO conspiracy case who claimed that their maximum sentence could not be increased to life based on murders they were not alleged to have committed. *Id.* at *34. Defendants Chester and Ford were not charged with personally participating in two murders, but Judge Tharp found that "their eligibility for life sentences d[id] not turn on whether they did so." *Id.* Judge Tharp relied on the Seventh Circuit's decision in *United States v. Benabe*, 654 F.3d 753 (7th Cir. 2011), in concluding that Chester and Ford were eligible for life sentences because "under conspiracy law, '**responsibility for**' murder does not mean **commission** of murder." *Chester*, 2017 WL 3394746, at *38 (emphasis in original). Judge Tharp continued:

> All that matters is whether the RICO "violation"—in other words, the conspiracy—was based upon racketeering acts that included the Bluitt murder. Under conspiracy law, it would not matter which conspirator committed the murder.
>
> . . .
>
> Once the jury answered that question affirmatively, Chester and Ford were subject to the enhanced penalty of a potential life sentence, because it was established beyond a reasonable doubt that a member of the conspiracy committed the murder of Bluitt and did so in a cold, calculating, and premediated manner, such that under Illinois law, the offense would be punishable by life imprisonment. See 720 ILCS 5/9(b)(11).

> . . .
>
> Therefore, the conspiracy—the RICO violation—was "based upon racketeering activity" (the murder of Bluitt in a cold, calculating, and premeditated way) for which "the maximum penalty includes life imprisonment." 18 U.S.C. 1963(a). The question for purposes of § 1963(a) is whether *the conspiracy* involved a life-eligible crime; it is not whether Ford or Chester killed Bluitt (or Neeley, or Daniels).

*Id.* at *37 (emphasis in original). *Chester* is not binding authority, and is currently being appealed to the Seventh Circuit, but this court agrees with Judge Tharp's reasoning and restatement of the applicable law.

Perez attempts to distinguish his situation from the ones addressed in *Chester* and *Benabe*, and asserts that any reliance on those cases is misplaced because they involved actual murders, not attempted murders. (Def.'s Resp. 12.) An overview of the Illinois murder statutes defeats this proposed distinction. Illinois's statutes regarding first-degree murder and attempted murder share an identical sentencing structure: neither offense is eligible for a life sentence in its basic form, but both become life-eligible with the presence of specific aggravating factors. *See* 720 ILCS 5/8-4(c)(1) (outlining the aggravating factors for attempted murder); 730 ILCS 5/5-8-1 (outlining the aggravating factors for first-degree murder). Judge Tharp acknowledged as much in *Chester* by instructing the jury that they must find not only that a member of the conspiracy committed first-degree murder, but also determine whether the conspirator did so "in a cold, calculating, and premediated manner[.]" *Chester*, 2017 WL 3394746, *37 (citing 720 ILCS 5/9-1(b)(11)).[1] Particularly relevant to this case, the sentencing enhancement section of Illinois's first-degree murder statute copies *verbatim* the attempted murder enhancement Perez contends is inapplicable to him: a person who "personally discharge[s] a firearm that proximately caused great bodily harm, permanent disability,

---

[1] After Illinois abolished the death penalty, state courts repurposed the Illinois statute governing a defendant's eligibility for the death penalty for acts of first-degree murder—720 ILCS 5/9-1—into a second source of aggravating factors allowing for life imprisonment. *See Chester*, 2017 WL 3394746, *49 (citing *People v. Delaney*, 2015 Ill. App. 130573-U, ¶ 34 (2d Dist. 2015)).

permanent disfigurement, or death to another person" shall receive an additional "25 years or up to a term of natural life." *Compare* 720 ILCS 5/8-4(c)(1)(D) *with* 730 ILCS 5/5-8-1(a)(1)(d)(iii). In other words, even for a completed murder, Illinois law imposes an enhanced sentence only on one who pulled the trigger. Yet Perez appears to concede that he would be eligible for a life sentence, had Victim 1 died in the attack. Perez's efforts to distinguish *Chester* and *Benabe* are not sustainable.

Perez nevertheless urges that first-degree murder is different "because, unlike attempted murder, Illinois law expressly permits life sentences to be imposed in murder cases based on theories of vicarious liability." (Defendant's Sur-Reply Brief [422] (Def.'s Sur-Reply), 3.) Perez cites the two generic Illinois statutes establishing "accountability for conduct of another", 720 ILCS 5/5-1, 5/5-2, to support this view, but he again ignores the clear parallels to the "insulation" he claims is present in cases of attempted murder. For one, neither 720 ILCS 5/5-1 or 5/5-2 specifically address murder, attempted murder, or any other offense. Second, numerous provisions within the aggravated first-degree murder statute include the same sort of insulating language that Perez claims to be unique to attempted murder—including the identical "personally discharged" firearm enhancement mentioned previously. *See* 730 ILCS 5/5-8-1(a)(1)(d)(iii). Perez cites *People v. Rodriguez*, 229 Ill. 2d 285, 295, 891 N.E.2d 854, 860 (2008), as one of several Illinois cases confirming that only the defendant who "personally discharged" a firearm during an attempted murder is eligible for a life sentence, but *Rodriguez* itself used that language in the context of the first-degree murder statute, not the attempted murder statute. *Id.* If anything, *Rodriguez* bolsters the Government's position that that there is no compelling reason to treat federal racketeering cases involving Illinois murder and attempted murder differently when it comes to vicarious liability—which the Seventh Circuit has consistently said applies in RICO cases to hold defendants accountable for murders committed by their co-conspirators.

Finally, Perez cites to a passage from the final pre-trial transcript in *Chester* in an attempt to limit Judge Tharp's reasoning to murders alone. (Def.'s Sur-Reply 9–-10.) Judge Tharp said:

> [Section 1961(1)] says based on murder, and that's what the indictment actually charges, that murders were committed. And it charges that murders were committed in the special findings.
>
> So I—you know, the theoretical conceptual question of whether one could simply charge a RICO conspiracy as an agreement to participate in the affairs of an enterprise through a pattern of racketeering activity that consisted of murder and qualify for an enhanced life sentence based on an agreement to murder, I think there's substantial reason to question that, but I don't think in this case I have to resolve that abstract question. I think based on the indictment and the special findings in particular here, what is sought to be the enhancing factor here is the commission of the murders alleged in the indictment.
>
> So from my view, based on the indictment in this case, there is the possibility that Mr. Vaughn is subject to an enhanced penalty of life imprisonment if the government can prove beyond a reasonable doubt as found by a jury that the allegations in the indictment on which it predicates the eligibility for the enhanced sentence, the murders that are alleged in the special findings, were committed, one or more of them. But I think the government does have to prove that much.

(Transcript of Proceedings [1199] in *United States v. Chester*, No. 13 CR 774 (Chester Tr.), 69:4–70:2). Perez argues that "that passage makes clear that Judge Tharp's ruling turned on the existence of the multiple murders alleged in the Chester superseding indictment, not on vicarious liability for any attempted murder." (Def.'s Sur-Reply 9.) In the quoted passage, however, Judge Tharp was not addressing a distinction between attempted murder and actual murder, but instead focused on the difference between *conspiracy* to commit murder and murder. Judge Tharp was discussing whether the law would permit federal prosecutors to transform a non-life eligible "*conspiracy* to commit murder" in Illinois (a Class 1 Felony capped at 15 years) into a life-eligible "racketeering conspiracy involving the *commission of murder*" by bringing the case under the RICO Act. Judge Tharp sensibly questioned the wisdom of allowing the latter approach, but noted that was not the question he was required to answer in *Chester*. Nowhere in the quoted passage did Judge Tharp reject the idea that Illinois law treats attempted

12

murder and first-degree murder in nearly-identical ways, or that federal law controls vicarious liability under the RICO Act. In fact, in the next paragraph (one that Perez does not mention), Judge Tharp rejected the very argument now advanced by Perez: [2]

> I understand Mr. Herman's further argument that okay, Judge, if you find that his sentence can be enhanced, his sentence can be enhanced only on the basis of what he is alleged to have done himself personally, and that's the attempted murder that he's charged with. That argument I don't believe holds up, and *Benabe* I believe resolves that argument and precludes that argument.
>
> . . .
>
> Judge Hamilton writing for the panel [in *Benabe*] says clearly and unequivocally that *Pinkerton* applies in the context of determining whether someone is eligible for a sentencing enhancement along with aiding and abetting or personal involvement. . . . *Benabe* [states unequivocally] that *Pinkerton* does apply in that context and that if one is subject to liability on the basis of foreseeable acts of a co-conspirator that that makes you eligible for a sentencing enhancement.

(Chester Tr. 70:3–9, 71:14–25.) Making it absolutely clear where he stood on the matter, Judge Tharp concluded:

> So in my view, the maximum penalty does not depend on proof that the defendant personally participated in any of the life-qualifying conduct. The eligible life-qualifying conduct is not limited to what a particular defendant is charged with having personally participated in. Mr. Vaughn has admitted he was a member of the Hobos RICO conspiracy. He is therefore liable for the foreseeable acts of co-conspirators in furtherance of that conspiracy. For the maximum penalty of life to apply, the government must present sufficient evidence to prove beyond a reasonable doubt that one or more of the life-qualifying murders alleged in the indictment occurred and was or were committed by a member or members of the conspiracy, that the murder or murders was or were foreseeable to Mr. Vaughn and that the murder was or were in furtherance of the conspiracy. The government need not prove that Mr. Vaughn himself committed any particular act.

(Chester Tr. 74:23-75:14.) There can be no confusion as to the scope of Judge Tharp's reasoning in *Chester*, or to the Seventh Circuit's holding in *Benabe*.

Perez pleaded guilty to conspiring to conduct the affairs of the Latin Kings organization through a pattern of racketeering activity. The predicate racketeering acts were committed by

---

[2] Not only are the arguments the same, but the attorney advancing them is the same. Perez's lawyer, Joshua Herman, also represented defendant Derrick Vaughn in *Chester* and is the same individual Judge Tharp was responding to in the Transcript.

Perez and others in furtherance of the overall conspiracy. One of those acts, the alleged attempted murder, would indisputably warrant a life sentence for one or more of Perez's co-conspirators. Under the plain language of Section 1963(a), Perez's violation of the RICO Act—the racketeering conspiracy—was "based on a racketeering activity for which the maximum penalty includes life imprisonment." Although Perez has stressed that it would be impossible for him to receive a life sentence for attempted murder in the state of Illinois, the issue in this case is not whether the predicate racketeering activity has a maximum penalty of life imprisonment *with respect to Perez*. If the Government can prove beyond a reasonable doubt that the attempt on Victim 1's life occurred and that Perez is responsible—either for ordering and assisting his subordinate Latin Kings to commit the act as alleged by the Government, or under *Pinkerton*—Perez will be subject to a statutory maximum sentence of life in prison.

## **CONCLUSION**

For the reasons stated, the court finds that the Government has alleged facts that, if proved beyond a reasonable doubt at a future proceeding, would subject Defendant David Perez to a maximum sentence of life imprisonment pursuant to 18 U.S.C. 1963(a).

ENTER:

Dated: February 13, 2018

_____
REBECCA R. PALLMEYER
United States District Judge